IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| NAOMI SPENCER DALY and DARRELL CASTLE | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:16-cv-08981 |
| NATALIE TENNANT, in her official capacity as Secretary of State of the State of West Virginia, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER**

Until last Friday, the filing deadline for independent candidates wishing to appear on the November ballot was August 1, 2016. Then, late on Friday evening, the Secretary of State notified the Plaintiffs and other independent candidates that the deadline had moved back in time to January. Because none of the Plaintiffs had met a deadline that no one knew existed, they and at least 15 other independent candidates will be removed from the ballot unless this Court intervenes.

This Court must intervene because both the new deadline and its retroactive application are patently unconstitutional and strike at the heart of representative democracy. The Plaintiffs therefore ask the Court to enjoin the Secretary of State from removing their names from the general election ballots. These ballots have already been printed *with* the Plaintiffs' names on them, but the Secretary of State plans to obscure their names with a sticker. The first round of these ballots must go out by Friday, so the Plaintiffs respectfully request that the Court issue an injunction by Thursday, September 22, 2016.

**BACKGROUND**

West Virginia law creates a two-tiered ballot-access scheme for candidates seeking to run in the general election for partisan offices: one for candidates of recognized parties, and one for all other candidates. Recognized parties[1] may nominate their candidates for the general election ballot by convention or primary election. West Virginia law considers all other candidates to be independent or "no party" candidates even if they are affiliated

---

[1] There are currently four recognized parties in West Virginia: the Democratic Party, the Republican Party, the Mountain Party, and the Libertarian Party.

2

with, or endorsed by, a political party that is not recognized in West Virginia.

Until last Friday, September 16, the nominating process for independent candidates was governed by West Virginia Code §§ 3-5-23 and 3-5-24. The process was straightforward. Independent candidates were required to file a nominating petition (called a "nomination certificate"), a notice of candidacy (called a "certificate of announcement"), and pay a filing fee by August 1, 2016.

The Secretary of State described the process, including the August deadline, on her website. While the page that described the process was taken down after the Plaintiffs filed their complaint in this matter, a version of that page that existed on Monday morning is attached to the Plaintiffs' Complaint as Exhibit 1. At no time prior to the filing of this action did the Secretary's website mention a January deadline for independent candidates.

The January deadline came from the Secretary of State's interpretation of a decision issued last Thursday by the West

Virginia Supreme Court in *Wells v. State ex rel. Miller*, No. 16-0779 (W.Va. Sept. 15, 2016). That case was a challenge to the candidacy of Erik Patrick Wells, who sought to qualify for the general election ballot as an independent candidate for local office. The trial court held that Wells could not qualify under the provisions governing independent candidates because he was then registered to vote as a member of a recognized party. The West Virginia Supreme Court agreed but went a step further.

The Supreme Court wrote that Wells could not appear on the general election ballot for the additional reason that he had not filed his certificate of announcement by the January deadline set out in § 3-5-7. Under a 1996 decision of the West Virginia Supreme Court, that section had previously applied only to candidates seeking the nomination of a recognized political party in a primary election. *See State ex rel. Browne v. Hechler*, 197 W. Va. 612, 476 S.E.2d 559 (1996). But the court concluded that amendments adopted in 2015 had effectively overruled its earlier decision and made the section, and its January deadline, applicable to any candidate in any election, including independent

4

candidates who seek to qualify for the general election ballot under West Virginia Code §§ 3-5-23 and 3-5-24.

A day later, the Secretary of State decided that the *Wells* should apply immediately and retroactively to all independent candidates who had qualified for the general election ballot. On the evening of Friday, September 16, the Secretary's staff began notifying those candidates that they were being removed from the general election ballot because of the *Wells* decision. In all, there were at least 17 candidates so notified.

The plaintiffs in this action were among them. Each of the plaintiffs is affiliated with an unrecognized political party and previously qualified for the general election ballot as an independent candidate by filing the required documents before August 1. Their names have been printed on the ballots that will go out beginning this Friday. But neither of them filed a certificate of announcement before January 30 and, absent an injunction, the Secretary of State will obscure their names with a sticker so that no citizen of West Virginia can vote for them.

## DISCUSSION

To obtain a temporary restraining order,[2] a plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). All four elements must be satisfied, *Winter*, 555 U.S. at 20, and the Plaintiffs can satisfy them here.

### Likelihood of Success

Restrictions on access to the ballot implicate two fundamental rights: "the right of individuals to association for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23. 30 (1968). Limitations on these rights "strike at the heart of representative

---

[2] The analysis for a motion for preliminary injunction and a request for temporary restraining order is the same. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

government" and must be carefully examined. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Ordinarily, state laws that impinge upon fundamental liberties are automatically subject to strict judicial scrutiny. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618 (1969). The Supreme Court has recognized, however, that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). For this reason, the Court has adopted a special balancing test for evaluating constitutional claims against state election laws, all of which inevitably affect the fundamental rights of political parties, candidates, and voters:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

7

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  Under this test, the level of scrutiny varies on a sliding scale with the extent of the asserted injury.  When, at the low end of the scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are general sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788, 788-89 n.9).  But when the law places "severe" burdens on the rights of political parties, candidates, or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance." *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

*The Character and Magnitude of the Burdens*

West Virginia's new filing deadline for independent candidates—January 30—comes 102 days before West Virginia's May 10 primary election and 284 days before the general election. It would be the earliest presidential deadline in the country by far. Only Texas, on May 8, has a deadline for presidential candidates before June.  It would be the second earliest legislative filing

8

deadline next to Texas's December deadline, and, unlike West Virginia, Texas has legislative primary elections on March 1. Compared to the primary date, it would be the earliest in the country.

Numerous courts, including the U.S. Supreme Court, have held that filing deadlines more than 75 days before a primary election impose heavy constitutional burdens. In *Anderson v. Celebrezze*, presidential candidate John Anderson challenged Ohio's ballot-access scheme for independent candidates. The deadline was March 20 of the election year, much later than the deadline here. 460 U.S. at 783 n.1. The Court found that the deadline imposed burdens so heavy as to require strict scrutiny. *Id.* at 790-795.

Similarly, in *Cromer v. South Carolina*, 917 F.2d 819, 823-24 (4th Cir. 1990), the Fourth Circuit struck down South Carolina's filing deadline for independent candidates for the state legislature. The court found that the state's March 30 filing deadline for a "statement of candidacy" imposed a heavy burden on the plaintiffs' rights. *Id.*

The Third, Seventh, Ninth, and Eleventh Circuits have also struck down less burdensome deadlines than the one at issue here. *See Nader v. Brewer*, 508 F.3d 1028 (9th Cir. 2008) (striking down a June deadline); *Lee v. Kieth*, 463 F.3d 763 (7th Cir. 2006) (striking down a filing deadline 323 days before the election); *Council of Alternative Political Parties v. Hooks*, 121 F3d 876 (3d Cir. 1997) (April 10 deadline); *New Alliance Party v. Hand*, 933 F.2d 1568 (11th Cir. 1991) (April 6 deadline).

These and many other cases recognize the harm that early deadlines cause to candidates and voters. Early deadlines require candidates to make premature and uninformed decisions about whether to run. Independent and minor-party candidates often decide to run as a result of their dissatisfaction with the major-party candidates or in response to particular issues arising closer to Election Day. For voters, the right to vote is "heavily burdened" if that vote can only be cast for major-party candidates at a time when other candidates are clamoring for a place on the ballot. *Anderson*, 460 U.S. at 787.

Under these circumstances, strict scrutiny should apply to West Virginia's January filing deadline.

*State Interests and Narrow Tailoring*

Because West Virginia's filing deadline for independent candidates imposes severe constitutional burdens, it must be narrowly drawn to advance a compelling state interest. Although it remains to be seen what interests, if any, the Secretary of State will identify in support of the deadline, the State has no compelling interest in preventing independent candidates from running for office by instituting restrictive barriers to the ballot.

The Supreme Court held in *Storer v. Brown* 415 U.S. 724, 736 (1974), that a state has a "compelling" interest in "the stability of its political system." But the Court held more recently that this interest does not extend so far as to permit a state to protect existing parties from competition with independent or minor-party candidates. *Anderson*, 460 U.S. at 801-02. Indeed, "[c]ompetition in ideas and governmental policies is at the core of our electoral process and of the First Amendment Freedoms." *Id.* at 802 (quoting *Williams v. Rhodes*, 393 U.S. 23, 32 (1968)). There

is thus a critical difference between a legitimate stability interest in avoiding "splintered parties and unrestrained factionalism," *Storer*, 415 U.S. at 736, and an illegitimate stability interest "in protecting the two major political parties," *Anderson*, 460 U.S. at 802.  A January deadline here would serve the latter and not the former.

Voter education also does not justify a January deadline here.  It is at bottom "unrealistic to suggest that it takes more than seven months to inform the electorate about the qualifications of [an independent] candidate simply because he lacks a partisan label." *Anderson*, 460 U.S. at 797.

Equal treatment also fails to justify a January deadline for independent candidates here.  While an early filing deadline might be justified for recognized-party candidates who seek to appear on West Virginia's May 10 primary election ballot, independent candidates do not appear on the primary ballot.  Independent candidates are not similarly situated with recognized-party candidates.  *Anderson*, 460 U.S. at 801.

Although there is no constitutional maximum deadline, no court of which the plaintiffs are aware has ever found justification for an independent-candidate filing deadline that falls so far in advance of both a state's primary and general election. This Court should therefore find that the Plaintiffs are likely to succeed on their challenge to the new deadline.

*Retroactive Application of Deadlines are Especially Pernicious*

It is important to note that the foregoing analysis under the *Anderson* balancing test would apply with equal force to a deadline that was announced well in advance. Unjustified early deadlines are unconstitutional all by themselves. But that is not what happened here.

Here, the Secretary of State applied a new deadline retroactively to remove all independent candidates from the general election ballot. This despite having made no mention of the deadline on her website, which provided as recently as yesterday that August 1 was the deadline.

Retroactively changing the rules of an election to eliminate competition is something that one might expect in an

13

authoritarian regime, and it is not surprisingly unconstitutional in a representative democracy as a violation of due process. *See Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1971) (invalidating a retroactive change to rules for counting petition signatures). Thus the new deadline imposed by the Secretary of State would be unconstitutional as applied to these Plaintiffs whether the deadline were in January or June. The Plaintiffs were constitutionally entitled to advance notice and an opportunity to comply with whatever deadline there might be.

This Court should therefore find the Plaintiffs likely to succeed on the merits of their Due Process claim standing alone.

**Irreparable Harm**

Harm is irreparable for purposes of a preliminary injunction when a court would be unable to compensate the plaintiffs adequately if they should prevail when the case is fully resolved on the merits. Free speech restrictions and harms that touch upon the constitutional and statutory rights of political parties, candidates, and voters are generally not compensable by money damages and are therefore considered irreparable. *See, e.g., Elrod*

*v. Burns*, 427 U.S. 347 373 (1976) (plurality opinion) ("The loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *League of Women Voters v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986).

Part of the reason for this treatment of political and voting harms is the special importance of the right to vote in the American democratic tradition:

> Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. 533, 561-62 (1962); *accord Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."). Money cannot fully compensate an individual for the loss of a right so fundamental. Part of the reason is also practical: a court

simply cannot undo, by means of a special election or otherwise, all of the effects of an invalid election. Tremendous practical advantages accrue to those who win even tainted elections, and a court simply has no way to re-level the playing field.

In this case, the irreparable nature of the threatened injuries is obvious. Without an injunction, the Secretary of State will obscure the Plaintiffs' names, and those of at least 15 other independent candidates, with a sticker on ballots that will go out beginning on Friday. She will then endeavor to remove their names from all other ballots to be cast in this election.

Under these circumstances, the Plaintiffs will suffer actual, imminent, and irreparable harm in the absence of the requested relief.

**Balancing the Equities**

The third *Winter* factor requires the Court to consider the potential impact that the requested injunction might have upon the Secretary of State and to balance that potential with the harms that the Plaintiffs could suffer should the request be denied.

While the absence of an injunction would allow the Plaintiffs to be unconstitutionally shut out of the political process, the Secretary of State is unlikely to suffer any harm if the injunction is granted. The ballots have already been printed *with* the Plaintiffs' names on them. The requested injunction would simply stop the Secretary of State from covering those names with a sticker. And there is no reason to believe that the injunction would cause any delay in sending out the first batch of ballots if the Court issues its injunction by Thursday, September 22.

**The Public Interest**

The public interest in this case is clear. The requested injunction will ensure that the citizens of West Virginia have an opportunity to vote for candidates of their choice. Without it, voter choices will be limited. The public undoubtedly has a vital interest in a broad selection of candidates as well as the conduct of free, fair, and constitutional elections. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (The public has a "strong interest in exercising the fundamental political right to vote." (citations omitted)). And "upholding constitutional rights serves the public

17

interest." *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). The requested injunction, if granted, would therefore favor the public interest.

**CONCLUSION**

The Court should grant the Plaintiffs' motion for a temporary restraining order and enjoin the Secretary of State from removing the Plaintiffs and similarly-situated independent candidates from general election ballots to be distributed beginning on Friday, September 23, 2016, based on the Secretary of State's new interpretation of West Virginia's ballot access deadlines.

Respectfully submitted this 20th day of September, 2016.

/s/ Bryan Sells*
Georgia Bar No. 635562
Law Offices of Bryan Sells LLC
PO Box 5493
Atlanta, GA 31107
(404) 480-4212
bryan@bryansellslaw.com
*intends to seek admission pro hac vice*

/s/ Anthony J. Majestro
West Virginia ID #5165
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

# CERTIFICATE OF SERVICE

At this early point in the case, no attorney has yet made an appearance for the Defendant, Secretary of State Natalie Tennant. However, I hereby certify that on September 20, 2016, I attempted serve the foregoing Plaintiffs' Brief in Support of their Emergency Motion for a Temporary Restraining Order upon the Defendant by emailing a copy to the following attorneys by electronic mail:

Ashley Summitt
Chief Counsel, West Virginia Secretary of State
easummitt@wvsos.com

Timothy Leach
Assistant Counsel, West Virginia Secretary of State
tleach@wvsos.com

J. Robert Leslie
Senior Deputy Attorney General, West Virginia Attorney General
James.r.leslie@wvago.gov


/s/ Anthony J. Majestro

Attorney for the Plaintiffs