IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Huntington, West Virginia

NAOMI SPENCER DALY and
DARRELL CASTLE,

      Plaintiffs,

v.                   No. 3:16-cv-08981

NATALIE TENNANT,
In her official capacity as
Secretary of State of the
State of West Virginia,

      Defendant.

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION
## FOR A TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

  The Plaintiffs' argument for a temporary restraining order begins with a fatally defective premise. The Secretary of State did not, as Plaintiffs would have it, move the filing deadline for appearing on the November general election ballot from August back to January. Rather, the January filing deadline is, and has been, set by West Virginia Code § 3–5–7. That provision unambiguously establishes that "*[a]ny person*" wishing to run for office in "any primary or *general election*" must "file a certificate of announcement declaring his or her candidacy" by "the last Saturday in January." W. Va. Code § 3–5–7(a), (c) (emphases added). As the West Virginia Supreme Court of Appeals has observed (in a holding Plaintiffs expressly acknowledge, *see* Pls.'s Br. In Support Of Their Emergency Motion For A TRO at 4–5 (ECF No. 4)), section 3–5–7 has applied to them since June 2015—months before the January 2016 filing deadline the Plaintiffs missed. *See Wells v. State ex rel. Miller*, No. 16-0779, 2016 WL 4981285, at *6 (W. Va. Sept. 15, 2016).

Regrettably, before *Wells*, the Secretary of State's website did not alert independent and minor-party candidates, like the Plaintiffs, of their obligation to comply with section 3–5–7. But that does not mean the Plaintiffs were absolved from their responsibility.[1] As the *Wells* Court observed, "the plain language of West Virginia Code § 3–5–7 . . . clearly mandates that all those seeking office in a primary or general election file a statutorily[]compliant certificate announcement" by the January deadline. *Id.* at *6. And because this statutory deadline (1) offends neither the First nor the Fourteenth Amendments to the United States Constitution and (2) was not applied retroactively to the Plaintiffs, the Plaintiffs cannot establish the requisite likelihood of success on the merits to justify a temporary restraining order. For these reasons and those that follow, the Secretary of State respectfully requests that the Court deny Plaintiffs' emergency motion.

## II. BACKGROUND

The West Virginia Constitution vests "wide powers [in] the legislature," granting it authority "to make all reasonable regulations and restrictions as to preparation of ballots and the conduct and returns of elections." *Id.* at *4 (quoting *Morris v. Bd. of Canvassers of City of Charleston*, 49 W. Va. 251, 38 S.E. 500 (W. Va. 1901)). Indeed, Article IV, section 8 of the State Constitution mandates that the Legislature "*shall* prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." W. Va. Const. art. IV, § 8 (emphasis added). And notwithstanding the First and Fourteenth Amendment rights of citizens to associate

---

[1] Notably, the Plaintiffs make no argument that they are entitled to relief due to a mistaken reliance on the Secretary of State's website or based on a theory of estoppel; nor could they. The Secretary of State's website made no representation that section 3–5–7 was inapplicable to minor party or independent candidates (although, concededly, it did not mention that section 3–5–7 did in fact apply to them). In any event, the Secretary of State's website cannot trump section 3–5–7's unambiguous mandate.

and advance common political goals, the United States Supreme Court has recognized that "[s]tates may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *see also Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("[A]s a practical matter, there must be a *substantial* regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process") (emphasis added) (quotation marks omitted).

In accordance with this authority, the West Virginia Legislature enacted section 3–5–7, which requires every person "who is eligible and seeks to hold an office or political party position to be filled by election in any primary or general election" to "file a certificate of announcement declaring his or her candidacy for the nomination or election to the office." W. Va. Code § 3–5–7(a). This certificate does not require much; rather, a potential candidate must disclose little more than his or her name and address, the date of the election, the office sought, his or her address, his or her political party, and an affirmation that her or she is a good-faith candidate. *See id.* § 3–5–7(d). The purpose of the certificate-of-announcement requirement is to "ensure the orderly administration of . . . elections and to provide notice to the electorate of the identity of candidates[.]" *Wells*, 2016 WL 4981285, at *6 (quoting *State ex rel. Browne v. Hechler*, 476 S.E.2d 559, 561 (1996)). Indeed, "[t]he substantial ends of the[ section 3–5–7] disclosures is clear: voters are entitled to know the party or principles for which a candidate stands, to the extent a candidate has so affiliated himself or herself, such that they can make a knowledgeable decision in casting their votes." *Id*.

This certificate must be filed "not later than the last Saturday in January." *Id.* § 3–5–7(c). An earlier iteration of section 3–5–7 differed in a critical respect from the version controlling the

3

instant case. Specifically, the 1991 version of section 3–5–7, which the West Virginia Supreme Court examined in *Browne*, expressly limited the certificate-filing requirement to primary elections. *See* 476 S.E.2d at 561. This limitation survived legislative amendments in 1998, 2005, 2007, and 2009. But in June 2015, the West Virginia legislature "eliminated this provision in its entirety," leaving no language within "the statute stating that its provisions apply exclusively to candidates participating in the primary election." *Wells*, 2016 WL 4981285, at *6; *see also* Judiciary–Electoral–Reforms, 2015 West Virginia Laws Ch. 103 (H.B. 2010). Thus, since June 2015 (six months before the January 2016 deadline established in the operative version of section 3–5–7), "the plain language of West Virginia Code § 3-5-7 . . . unmistakably makes itself applicable to all candidacies . . . and clearly mandates that all those seeking office in a primary or general election file a [timely] statutorily[]compliant certificate of announcement." *Wells*, 2016 WL 4981285, at *6.

### III. ARGUMENT

Temporary restraining orders, like preliminary injunctions, "are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 285 n.2 (4th Cir. 2007).[2] To justify such relief, the Plaintiffs must demonstrate that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (*en banc*). They have not done so.

---

[2] Requests for preliminary injunctions and temporary restraining orders are evaluated under the same standards. *See, e.g.*, *Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir.1994) (applying preliminary injunction standard to a request for temporary restraining order).

### A. The Plaintiffs Cannot Establish a Likelihood of Success on the Merits.

The Plaintiffs argue that section 3–5–7 implicates the First and Fourteenth Amendment rights of West Virginia citizens to associate and to vote effectively. *See* Pls.'s Br. In Support Of Their Emergency Motion For A TRO at 6 (ECF No. 4)). First, they argue that the Court should apply strict scrutiny to section 3–5–7 and find that they are likely to demonstrate that the deadline in section 3–5–7, standing alone, is unconstitutional. *Id.* at 7–8. In their view, the January deadline imposed by section 3–5–7 severely burdens the rights of political candidates and voters and, accordingly, cannot pass constitutional muster. Second, they contend that the Secretary of State aggravated this error by applying the deadline retroactively.

On each point, the Plaintiffs are mistaken. Section 3–5–7 "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters" and, for that reason, strict scrutiny does not apply. Because it does not apply, West Virginia's "'important regulatory interests are . . . sufficient to justify'" the section 3–5–7 deadline. *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). And because the Secretary of State did not retroactively apply section 3–5–7's statutory deadline, the Plaintiffs second argument fails as well. For these reasons, they cannot demonstrate a likelihood of success on the merits and the Court should deny their request for an emergency restraining order.

### 1. The Filing Deadline in West Virginia Code § 3–5–7 Offends No Constitutional Principles.

Reduced to its core, the Plaintiffs' main argument is that filing deadlines that expire too far in advance of an election (75 days, in their view, *see* Pls.'s Br. In Support Of Their Emergency Motion For A TRO at 9 (ECF No. 4)) trigger strict scrutiny. They further argue that, section 3–5–7 does not survive this hard look. Although they mention the balancing test the

United States Supreme Court established in *Anderson*, 460 U.S. at 789, they advocate for something more akin to a *per se* rule, relying on, *inter alia*, *Cromer v. South Carolina*, 917 F.2d 819 (4th Cir. 1990).

The Defendant is obligated to inform the Court that the Fourth Circuit has since clarified that a litigant cannot trigger strict-scrutiny review of a ballot-access deadline based solely on length of time between the deadline and an election. Indeed, the Fourth Circuit has expressly "disavowed" any suggestion that *Cromer* established a "bright-line rule" like the one the Plaintiffs seem to advance. *See Wood v. Meadows*, 117 F.3d 770, 774 (4th Cir. 1997). Rather, in *Wood*, the Fourth Circuit held that, when ballot-access deadlines impose "only reasonable burdens on First and Fourteenth Amendment rights," they "will be presumptively valid" because the "burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme." *Id.* at 773 (quoting *Burdick*, 504 U.S. at 441).

Accordingly, the Defendant awaits the Court's determination on whether strict scrutiny applies.

    **2.**    **The Secretary of State Did Not Retroactively Apply West Virginia Code § 3–5–7.**

The Plaintiffs' second argument—that the Secretary of State unconstitutionally applied the section 3–5–7 deadline retroactively—is wrong as a matter of fact. Simply put, the Secretary of State did not, *post-hoc*, move the section 3–5–7 deadline from August to January. Since June 2015 (six months before the January 2016 deadline established in the operative version of section 3–5–7), "the plain language of West Virginia Code § 3–5–7 . . . unmistakably makes itself applicable to all candidacies . . . and clearly mandates that all those seeking office in a primary or

general election file a [timely] statutorily[]compliant certificate of announcement." *Id.* In other words, the deadline did not move; the Plaintiffs simply overlooked it.

Concededly, the Secretary of State's website did not mention section 3–5–7's applicability to independent and minor-party candidates like the Plaintiffs. While this omission is regrettable, the fact remains that the all potential candidates, including the Plaintiffs, were charged with following "the plain language of West Virginia Code § 3–5–7," which "clearly mandates that all those seeking office in a primary or general election file a statutorily[]compliant certificate announcement" by the January deadline. *Wells*, 2016 WL 4981285, at *6. Because that deadline was plainly established at least six months before the January 2016 deadline, the Plaintiffs' due-process argument necessarily fails.

**B.     The Plaintiffs Have Failed to Satisfy the Other Temporary Restraining Order Requirements.**

The Plaintiffs' failure to demonstrate any likelihood of success on the merits warrants denial of their motion for a temporary restraining order without further analysis. But should the Court look to the three other temporary-restraining-order considerations, it is plain that, on balance, they similarly counsel in favor of denying the Plaintiffs' request. Assuming (without conceding) that the Plaintiffs' exclusion from the November ballot might constitute an irreparable injury, they cannot demonstrate that the equities favor granting their requested relief or that the public would benefit from it. Regarding the former, "equity will not ordinarily relieve against a mere mistake of law" and, at bottom, the Plaintiffs' mistaken belief that section 3–5–7 does not apply to them is why they are being removed from the November ballot. *Clarksburg Trust Co. v. Commercial Cas. Ins. Co.*, 40 F.2d 626, 630 (4th Cir. 1930). Regarding the latter, including the Plaintiffs on the ballot notwithstanding their noncompliance with section 3–5–7 would wholly deprive the public of the benefits the section 3–5–7 deadline is designed to

confer—*i.e.*, allowing the public, in a timely fashion, to "know the party or principles for which a candidate stands, to the extent a candidate has so affiliated himself or herself, such that they can make a knowledgeable decision in casting their votes." *Wells*, 2016 WL 4981285, at *7.

## IV.  CONCLUSION

For the foregoing reasons, the Secretary of State respectfully requests that the Court deny the Plaintiffs' Emergency Motion For A Temporary Restraining Order.

Respectfully submitted,


NATALIE TENNANT,

In her official capacity as
Secretary of State of the
State of West Virginia,

By Counsel.

By: /s/   J. Robert Leslie, Esq.
      Senior Deputy Attorney General
      WEST VIRGINIA OFFICE OF
       ATTORNEY GENERAL
      West Virginia Bar # 6341
      1900 Kanawha Blvd., East
      State Capitol, Bldg 1, Rm E-26
      Charleston, WV 25305
      (304) 558-2021

# CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2016, I caused to be mailed the foregoing document by United States Postal Service to Plaintiffs as set out below:

>Law Offices of Bryan Sells LLC
>PO Box 5493
>Atlanta, GA 31107
>(404) 480-4212
>
>Anthony J. Majestro
>Powell & Majestro, PLLC
>405 Capitol Street, Suite P-1200
>Charleston, WV 25301
>
>*Attorneys for Naomi Spencer Daly and Darrell Castle*

>/s/   J. Robert Leslie, Esq.
>   Senior Deputy Attorney General
>Counsel for Defendant Secretary of State,
>State of West Virginia