IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

NAOMI SPENCER DALY and
DARRELL CASTLE,

                 Plaintiffs,

Dorrell W. Arthur,

                 Intervenor Plaintiff,

v.                               CIVIL ACTION NO. 3:16-08981

Mac Warner,
in his official capacity as
Secretary of State of the
State of West Virginia, and
BRIAN WOOD, in his official
capacity as Clerk of the County
Commission of Putnam County,
West Virginia,

                 Defendants.

**ORDER**

Pending before the Court is Plaintiffs Naomi Spencer Daly and Darrell Castle's Motion for Attorneys' Fees and Expenses under 42 U.S.C. § 1988. ECF No. 31. This motion arises out of the Court granting Plaintiffs' action for a permanent injunction, enjoining "Defendants Mac Warner[1] and Brian Wood, along with their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them, from enforcing the filing deadline set out in West Virginia Code § 3-5-7(c) (2015) against independent and minor-party

---

[1] Secretary Warner is the successor in office to Natalie Tennant, one of the original Defendants in this case.

candidates whose nomination is governed by West Virginia Code § 3-5-23(a) (2015)." *Order*, at 1-2 (Jan. 24, 2017), ECF No. 26. In the Court's Judgment Order entered on January 24, 2017, the Court found Plaintiffs were the prevailing party within the meaning of § 1988. *Order* (Jan. 24, 2017), ECF No. 27. Thereafter, Plaintiffs filed the present motion for fees on February 21, 2017. Defendants have not responded, nor filed any opposition to the motion. As the motion is now ripe for resolution, the Court **GRANTS** Plaintiffs' motion for the following reasons.

Under the "American Rule," fees and costs are normally not recoverable. *McGee v. Cole*, 115 F. Supp. 3d 765, 770 (S.D. W. Va. 2015) (citing *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 815 (1994)). However, Congress set aside this longstanding principle in the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, which "provides that a prevailing party in certain civil rights actions may recover 'a reasonable attorney's fee as part of the costs.'" *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010) (footnote omitted). "[U]nless special circumstances would render such an award unjust,'"[2] a prevailing party ordinarily should recover fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94–1011, at 4 (1976), 1976 U.S.C.C.A.N. 5908, 5912). In *Perdue*, the Supreme Court held that "a 'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." 559 U.S. at 552. In other words, it is aimed at persuading attorneys to take cases under certain civil rights statutes, but it is not calculated to provide "'a form of economic relief to improve

---

[2] For instance, a court may deny a fee award "[w]here the prevailing party seeks an attorneys' fee 'so outrageously excessive so as to shock the conscience of the court[.]'" *McGee*, 115 F. Supp. 3d at 770 (quoting *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 94 (4th Cir. 1993)).

the financial lot of attorneys.'" *Id*. (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

In calculating a fee award, courts employ a three-step process. First, the court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citation omitted). To ascertain what are "reasonable" hours and rates, the Fourth Circuit has held that the court should consider the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 243–44 (citations omitted). After the lodestar figure is determined, the second step is for the court to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id*. at 244 (internal quotation marks and citations omitted). Third, the court then "awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*.

This case involved Plaintiffs' challenge to the constitutionality of a filing deadline for candidates of parties not recognized by West Virginia who sought to appear on the November 2017 general election ballot. The case was precipitated by a decision by the West Virginia

Secretary of State's Office on Friday, September 16, 2016, that seventeen independent candidates be removed from the general election ballot based upon an opinion issued by the West Virginia Supreme Court of Appeals one day earlier. *See Wells v. State ex rel. Miller*, 791 S.E.2d 361 (W. Va. 2016). Plaintiffs Daly and Castle, who would have been removed from the ballot, filed a Verified Complaint on Monday, September 19, and an Emergency Motion for a Temporary Restraining Order on Tuesday, September 20.[3] As ballots were scheduled to be sent out on Friday, September 23, the Court held an emergency hearing on Thursday, September 22, and granted a preliminary injunction. In January 2017, the parties consented to entry of a permanent injunction, and the Court found Plaintiffs were prevailing parties within the meaning of § 1988.

In determining the lodestar figure, the Court recognizes that Plaintiffs' counsel are both highly skilled attorneys with experience in voting rights and election law litigation. Mr. Sells, Plaintiff's lead counsel, is a nationally recognized authority on the subject, and Mr. Majestro maintains an active election law practice in West Virginia. As this action arose quickly, counsel were required to act expeditiously in filing a Verified Complaint and emergency motion and be prepared to argue novel issues before this Court in less than one week. Despite these daunting constraints, the Court finds counsel were well prepared and presented high-quality arguments on complicated and difficult constitutional and statutory issues.

---

[3] Intervenor Plaintiff Dorrell W. Arthur brought the action against Brian Wood on September 21, in Mr. Wood's official capacity as Clerk of the County Commission of Putnam County, West Virginia. Mr. Arthur was a non-affiliated candidate for the Putnam County Commission. Mr. Arthur's interests were not adequately represented by Ms. Daly (a candidate for the West Virginia House of Delegates) or Mr. Castle (a candidate for President of the United States) because he received his certificate of announcement from the County Clerk, rather than the Secretary of State's Office. Therefore, he filed his action to prevent inconsistent obligations amongst candidates.

In their current motion, Plaintiffs seek $33,143.00 in attorneys' fees and $1,091.81 in costs. With respect to fees, both Mr. Sells and Mr. Majestro state that their current hourly rate is $550. Mr. Sells states he spent 45.5 hours on this case, and Mr. Majestro worked 16.4 hours, but he voluntarily reduced his time to 14.76 hours to account for any duplication of time with Mr. Sells. Upon review, the Court finds both the rate and the number of hours counsel devoted to this matter are fair and reasonable.

Specifically, the Court finds that $550 per hour was not contested and is commensurate with the unique and high qualifications of counsel in this specialized legal area. The case presented high-priority and important legal issues, which necessitated experienced counsel. The Court doubts that attorneys unfamiliar with voting and election law cases could have litigated this case with the same competence and urgency as required by this action.

Likewise, the Court has reviewed the timesheets submitted by counsel and finds the number of hours billed for litigating this action is exceedingly reasonable. Indeed, the Court finds it somewhat remarkable that counsel only spent a combined total of approximately 60 hours in filing the Verified Complaint, filing and reviewing other pleadings, researching the various issues, holding telephone conferences, sending and reviewing e-mails, traveling to Huntington, and arguing the case before this Court. Thus, for these reasons and the fact Plaintiffs enjoyed success on the merits of their claim, the Court sees no reason to reduce either the hourly rate or the number of hours spent. Likewise, the Court has reviewed the costs sought by Plaintiffs and finds they are fully recoverable.

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees and Expenses under 42 U.S.C. § 1988 (ECF No. 31) and **AWARDS** Plaintiffs $33,143.00 in attorneys' fees and $1,091.81 in costs, for a total award of $34,234.81 against Defendant Warner in his official capacity as Secretary of State. The Court finds that Defendant Wood is not responsible to contribute to this award as he was brought into this action merely to ensure consistency amongst candidates.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 16, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE